BRODSKY & SMITH, LLC
Evan J. Smith, Esquire
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone:  (877) 534-2590
Facsimile: (610) 667-9029
esmith@brodsky-smith.com

*Attorneys for Plaintiff Vincent Zinni*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT ZINNI, on behalf of himself and those similarly situated, | Case No.: 8:15-cv-00863-JLS-JCG |
| Plaintiff, | |
| v. | **FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT** |
| CLICKSOFTWARE TECHNOLOGIES LTD. ISRAEL BOROVICH, MOSHE BENBASSAT, SHAI BEILIS, NIRA DROR, SHLOMO NASS, MENAHEM SHALGI, GIL WEISER, FRANCISCO PARTNERS, LP, OPTIMIZER TOPCO S.A.R.L, OPTIMIZER MERGER HOLDINGS LTD. | **JURY DEMAND** |
| Defendants, | |

Plaintiff Vincent Zinni ("Plaintiff"), on behalf of ClickSoftware (defined below) and himself and all others similarly situated, by his attorneys, makes the following allegations based upon information and belief, except as to allegations

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      Plaintiff, by undersigned counsel, brings the following class action and derivative complaint individually and on behalf of all the public shareholders of ClickSoftware Technologies Ltd. ("ClickSoftware" or the "Company") against the Company's Board of Directors (the "Board" or the "Individual Defendants") seeking equitable relief for their violations of Rule 14(a) promulgated under the Securities Exchange Act of 1934 ("Rule 14(a)"), and for their breaches of fiduciary duty arising out of the attempt to sell the Company to Optimizer TopCo S.a.r.l ("Optimizer") and Optimizer Merger Holdings Ltd. (the "Merger Sub") in a transaction valued at approximately $438 million, as detailed herein (the "Proposed Transaction" or "Merger").

2.      The terms of the Proposed Transaction are set forth in a 6-K filing by the Company with the SEC on April 30, 2015, wherein defendant ClickSoftware acknowledges that a definitive Agreement and Plan of Merger (the "Merger Agreement") was approved by and between the Company and Francisco Partners Management L.P. ("Francisco Partners"), a private equity firm which owns Optimizer and Merger Sub (collectively "Optimizer").  The Merger Agreement contemplates that Optimizer will acquire all of the outstanding shares of common stock of the Company in exchange for $12.65 per share in cash.

3.      The Proposed Transaction is a "going private" action.  Optimizer and Merger Sub are legal entities created for the sole purpose of effectuating the Merger; orchestrated primarily by Francisco Partners, for the purpose of ridding the Company of its public shareholders.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

2

4. In approving the Proposed Transaction, the Individual Defendants (defined below) have breached their fiduciary duties of loyalty, good faith and due care to ClickSoftware and its public shareholders by, *inter alia*, (i) agreeing to sell ClickSoftware through a flawed sales process and for inadequate consideration; and (ii) engineering the Proposed Transaction to benefit themselves and/or Francisco Partners and Optimizer without regard to the Company or its shareholders. Moreover, as alleged further herein, Francisco Partners and Optimizer aided and abetted the Individual Defendants' breaches of fiduciary duty.

5. Defendants further breached their fiduciary duties to ClickSoftware and its shareholders on May 7, 2015, when the Company filed its Proxy Statement on Form 6-K with the SEC ("Proxy"), setting the Vote date for June 11, 2015 and recommending that ClickSoftware shareholders vote in favor of the Merger. However, as described herein, the Proxy fails to disclose material information necessary for a reasonable shareholder to make an informed decision on whether to approve the Proposed Transaction, in breach of the Individual Defendants' duty of care. ClickSoftware cannot be exempted from federal laws because its Chief Financial Officer signed the Proxy pursuant to Exchange Act laws. Further, ClickSoftware bears the burden to proof they are exempt from complying with Exchange Act laws and cannot do so here.

6. For these reasons and as set forth in detail herein, both the value to ClickSoftware shareholders contemplated in the Proposed Transaction and the process by which Defendants seek to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other public shareholders of the Company and in violation of both United States federal and Israeli laws.

7. Accordingly, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

3

is consummated, to recover damages resulting from the Individual Defendants' violations of their fiduciary duties, aided and abetted by Francisco Partners, Optimizer, and Merger Sub.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14(a). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367. Additionally, Defendants removed this action on June 2, 2015 pursuant to 28 U.S.C. §§1332, 1441 and 1446.

9.     Venue is proper in this Court because the Defendants reside, are found, have agents and regularly transact business in this District as provided in 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

10.     Plaintiff, Vincent Zinni ("Plaintiff"), is a holder of ClickSoftware common stock and has been the owner of shares during all relevant times hereto. Plaintiff Zinni is a citizen of the state of California.

11.     Defendant ClickSoftware is a corporation incorporated under the laws of the State of Israel with principal executive offices located at Azorim Park, Oren Building, 94 Em Hamoshavot Road, Petach Tikva, 4970602, Israel.  ClickSoftware is a business software, field service management and workforce management company.   It offers automated mobile workforce management and service optimization solutions for enterprise and small business, both for mobile and in-house resources.  ClickSoftware was founded in 1979 and the Company's common stock is traded on the NASDAQ under the symbol "CKSW."

12.     Defendant Francisco Partners, is a privately held Limited Partnership organized under the laws of California with principal executive offices located at

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

One Letterman Drive, Building C, Suite 410, San Francisco, CA 94129.  Francisco Partners is a private equity firm focused exclusively on investments in technology and technology-enabled services businesses.  Since its inception in 1999, Francisco Partners has raised approximately $10 billion in committed capital across four funds and has built an investment portfolio including over 60 companies.

13.   Defendant Optimizer is a corporation organized under the laws of Luxembourg with principal executive offices located at One Letterman Drive, Building C, Suite 410, San Francisco, CA 94129.  Optimizer is a holding company created by Francisco Partners for the sole purpose of allowing ClickSoftware to go private through the consummation of the Proposed Transaction.

14.   Defendant Merger Sub, is a company organized under the laws of the State of Israel with its headquarters at One Letterman Drive, Building C, Suite 410, San Francisco, CA 94129.  Merger Sub was created by Francisco Partners for the sole purpose of allowing ClickSoftware to go private through the consummation of the Proposed Transaction.

15.   Defendant Israel Borovich ("Borovich") has been the Chairman of the Board of Directors of the Company since 2011.  Borovich also served on the Company's Board from 1997-2009.

16.   Defendant Moshe BenBasset ("BenBasset") is the founder and Chief Executive Officer ("CEO") of ClickSoftware, and has served as a Director since the Company's inception.

17.   Defendant Shae Beilis ("Beilis") has served as an Independent Director of the Company's Board since 2009.

18.   Defendant Nira Dror ("Dror") has served as an Independent Director of the Company's Board since 2009.

---

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

19.     Defendant Shlomo Nass ("Nass") has served as an Independent Director of the Company's Board since 2009.

20.     Defendant Menahem Shalgi ("Shalgi") has served as an Independent Director of the Company's Board since 2010.

21.     Defendant Gil Weiser ("Weiser") has served as an Independent Director of the Company's Board since 2003.

22.     The defendants referred to in paragraphs 15 through 21 are collectively referred to herein as the "Individual Defendants" or the "Board".

23.     By reason of the above Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of ClickSoftware and owe Plaintiff and the other members of the Class the highest obligations of good faith, fair dealing, due care, loyalty, and full and candid disclosure.

24.     Collectively, ClickSoftware the Individual Defendants, Francisco Partners, Optimizer and Merger Sub are referred to herein as "Defendants."

**CLASS ACTION ALLEGATIONS**

25.     Plaintiff brings this action individually and as a Class action, pursuant to Federal Rules of Civil Procedure 23 on behalf of all common shareholders of the Company (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable. As of April 30, 2015, there were approximately 33.33 million shares of ClickSoftware common stock outstanding, resulting in hundreds, if not thousands of shareholders.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

28.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:

        a.     Whether the Proposed Transaction is unfair to the Class;

        b.     Whether Plaintiff and the other members of the Class would be irreparably damaged were the transactions complained of herein consummated;

        c.     Whether Defendants have breached their fiduciary and other common law duties owed by them to Plaintiff and the other members of the Class;

        d.     Whether Defendants violated Federal laws;

        e.     Whether the Individual Defendants are acting in furtherance of their own self-interest to the detriment of the Class;

        f.     Whether the Class is entitled to injunctive relief or damages as a result of the wrongful conduct committed by the Defendants;

        g.     Whether Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction; and

        h.     Whether Francisco Partners and/or Optimizer aided and abetted the Individual Defendants' breaches of fiduciary duty owed to Plaintiff and the other members of the Class in connection with the Proposed Transaction.

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

30.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

31.    Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

**SUBSTANTIVE ALLEGATIONS**

***ClickSoftware Background***

32.    ClickSoftware is an Israel-based business solutions company that develops software to be used to schedule and dispatch field service employees.  They are the biggest, most versatile company in their field, delivering a complete end-to-end mobile workforce solution to the service industry that is comprised of over 20 years of experience and more than 500 person-years in research and development.

33.    The Company currently has over fifteen thousand customers worldwide and is ranked as a "market leader" in Field Service Management according to analyst firms like Forrester, Gartner, and IDC.   Significantly, Gartner has ranked ClickSoftware as an industry leader for four consecutive years.

34.    While the Company is headquartered in Israel, it has offices in eight geographical locations across the globe, operating in the Americas, Latin America, Europe, and the Asia Pacific Region.  Through these offices ClickSoftware employs over 700 dedicated professionals.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

35.     Since its creation, ClickSoftware has been consistently recognized as a powerhouse in its field by various bodies, being the recipient of such awards as the Frost & Sullivan 2015 North American Mobile Workforce Management Product Line Strategy Leadership Award and the SAP Quality Awards in Europe.

36.     ClickSoftware's economic success is seen in several areas, including a recent joint venture with Nextel Telecomunicações Ltda. ("Nextel"), one of the largest mobile network operators in Brazil.  The joint venture is designed to increase workforce productivity as Nextel adapts to increased demand for 3G services in Brazil through the utilization of optimizing services and solutions from ClickSoftware.  Speaking on the project, MiRodrigo Rescia, a manager at the Network Operation Center for Nextel has stated on the joint venture, "It was important for us to choose a vendor with domain expertise that would work with us to scale our operations."

37.     On February 4, 2015 ClickSoftware released its 2014 Q4 and year end results.  Significantly, these results showed that the Company experienced record financial results.

38.     Company revenues were $34.5 million in Q4 of 2014, a 12% year-over-year increase from the same time last year and a company historical record for Q4 Revenues.

39.     Additionally, the Company added 22 new customers, of which 15 were cloud subscriptions.  Along that same vein, cloud subscription revenues increased to $5.7 million in 2014 Q4 compared to $0.5 million in 2013 Q4, *an increase of 1040%*.

40.     Speaking on the growth and progress of ClickSoftware, Defendant BenBasset stated, "I am pleased to report the tremendous progress in our efforts to grow the Company while we and the market transition into a cloud subscription

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

model." BenBasset described the company's 22% revenue growth in the year as a "remarkable achievement."

41.   ClickSoftware's stellar performance in 2014 also caught the eye of many financial analysts. Zack's Equity Research reported on ClickSoftware's 2014 performance and future potential stating, "In fact, the current growth estimate for this year calls of significant earnings-per-share growth. Furthermore, the long-term growth rate is currently an impressive 17.5%, suggesting pretty good prospects for the long haul."

42.   ClickSoftware's positive performance was not limited to 2014 Q4 results; on May 6, 2015 the Company released its 2015 Q1 earnings report which showcased further success. Notably the Company reported that cloud subscription revenues continued to increase, jumping up to $5.6 million from $2.3 million at the same time last year, a 145% increase.

***The Proposed Transaction***

43.   On April 30, 2015, ClickSoftware issued a press release announcing that it had agreed to be acquired by Francisco Partners in a going private transaction valued at approximately $438 million, or approximately $12.65 per share in cash.

> **BURLINGTON, Mass., April 30, 2015 /PRNewswire/** -- ClickSoftware Technologies Ltd. (NasdaqGS: CKSW) (the "Company"), the leading provider of automated mobile workforce management and optimization solutions for the service industry, today announced that it has signed a definitive agreement to be acquired by private funds managed by Francisco Partners Management L.P. ("FP" or "Francisco Partners"), a leading global technology-focused private equity firm, in an all-cash transaction valued at approximately $438 million.
>
> Under the terms of the agreement, Francisco Partners will acquire all of ClickSoftware's outstanding ordinary shares for $12.65 per share in cash. This represents a premium of approximately 45% over the

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

average closing price of the Company's shares on the Nasdaq Global Select Market during the previous 90 calendar days. The Board of Directors of ClickSoftware unanimously approved the merger agreement and recommends that ClickSoftware's shareholders approve the agreement.

Dr. Moshe BenBassat, Founder and CEO of ClickSoftware, said, "After a comprehensive evaluation and review of strategic alternatives designed to enhance shareholder value, we are confident this agreement represents a favorable outcome for our shareholders, providing them with immediate, substantial cash value. Furthermore, we are excited to partner with Francisco Partners, a firm with an established track record of working with companies transitioning to Cloud and with companies in relevant verticals to ClickSoftware.  The added flexibility we will have as a private company, combined with the benefit of FP's knowledge and domain expertise, will allow us to more effectively focus on our long-term investment and growth objectives, which will benefit our employees, customers and partners."

"We are excited to support the continued growth of ClickSoftware," said Matt Spetzler, Partner at Francisco Partners. "ClickSoftware is a leader in the mobile workforce management space, and we look forward to combining our expertise with its talented team of professionals to further enhance its Cloud solutions, grow its customer pipeline and further advance its strategic goals."

The transaction is subject to certain closing conditions, including approval of the Company's shareholders. The transaction is not contingent upon receiving third party financing. ClickSoftware's shareholders will be asked to vote on the proposed transaction at a special meeting of shareholders that will be held on a date to be announced. ClickSoftware expects the transaction to be completed in July 2015. Upon completion, ClickSoftware will become a privately held company.

Jefferies LLC is acting as exclusive financial advisor to ClickSoftware. Amit, Pollak, Matalon & Co. is acting as legal counsel to ClickSoftware, and Sullivan & Worcester LLP is acting as U.S. counsel to ClickSoftware.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

Barclays Capital Inc. is acting as exclusive financial advisor and Meitar Liquornik Geva Leshem Tal is serving as legal counsel to Francisco Partners.

### The Inadequate Merger Consideration

44.    Analysts' expectations, the Company's dominant advertising market position, extraordinary growth, and positive future outlook all establish the inadequacy of the Merger consideration.

45.    Pursuant to the terms of the Merger Agreement, the Merger values ClickSoftware at $12.65 per share.  Significantly, financial analysts from both Oppenheimer and Northland Securities have valued the firm at $13.00 per share as recently as one year ago.  This valuation is a clear reflection of the Company's strong position in the industry.

46.    As discussed *supra*, the Company's excellent growth prospects cannot be understated.  As recommended by Zacks Equity Research as recently as February 13, 2015, "So if you are looking for a fast growing stock that is still seeing plenty of opportunities on the horizon, make sure to consider CKSW.  Not only does it have double digit earnings growth prospect, but its impressive Zacks Rank suggests that analysts believe better days are ahead for CKSW as well."

47.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction and the Merger is the product of the Board's breaches of fiduciary duty, aided and abetted by Francisco Partners, Optimizer and Merger Sub.

### The Unfair Sales Process

48.    In addition to the inadequate consideration offered to ClickSoftware shareholders, the entire process deployed by the Individual Defendants and Francisco Partners (though Optimizer) was also unfair and inadequate.

---

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

49.     In fact, it is no surprise that Francisco Partners was ClickSoftware's favored bidder as the two companies have a history dating back to 2013, when Francisco Partners first indicated an interest in acquiring the Company.  Although Francisco Partners never submitted a final bid in the 2013, ClickSoftware and Francisco Partners made sure that a final deal was agreed to this time.

50.     The fitful process to sell the Company began on November 2014 when Francisco Partners again indicated interest in acquiring ClickSoftware and submitted an offer of $11.00 per share.

51.     Subsequently, by the end of 2014, the Company's financial advisor, Jefferies LLC ("Jefferies") apparently contacted 16 potential bidders.  However, the Proxy is devoid of any information pertaining to how many of these 16 parties entered into confidentiality agreements and whether these agreements contained "don't-ask-don't-waive" provisions.  The Proxy does note that Francisco Partners entered into a confidentiality agreement on January 22, 2015.

52.     On February 4, 2015, there was a "media report" and "rumors" which prompted 11 additional parties to express interest in a potential acquisition of ClickSoftware.  Out of the 27 potential bidders (16 previously contacted and 11 additional expressed interest), the Company decided to meet with only 12 parties, including Francisco Partners.

53.     Between February and March 2015, the Company received five initial indications of interest, including a proposal from Company B at $12.00 to $13.50 per share, a proposal from Company C at $13.00 to $15.00 per share, and an undisclosed proposal from Francisco Partners.

54.     Suspiciously, the Proxy reports that "following presentation" several parties, including Company C, decided to not move forward with a potential acquisition.  Notably, the Proxy provides no clarification on when such presentations

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

13

took place, who made the presentations and what efforts, if any, were made to negotiate with Company C, which offered the highest deal consideration.

55.    On April 2, 2015, Francisco Partners submitted a formal non-binding proposal to acquire the Company for $13.50 per share.    Francisco Partners subsequently raised its offer to $13.64 per share.  Protecting its favored bidder, the Company quickly entered into an exclusivity agreement with Francisco Partners without first asking Company B to raise its offer.  Indeed, ClickSoftware never even informed Company B that it would need to raise its offer, prior to rushing into an exclusivity agreement with Francisco Partners and foreclosing Company B's opportunity to submit a superior proposal for the Company.

56.    Unfortunately for ClickSoftware shareholders, after the Company entered into the exclusivity agreement, Francisco Partners exercised its bargaining power and dramatically lowered its offer price to $12.50 per share.  The Board scrambled to salvage the deal with its favored bidder and convinced Francisco Partners to raise its offer to $12.65.  Incredibly, the Board again agreed to extend the exclusivity period with Francisco Partners without first contacting Company B or any other interested parties.

57.    The Board's decision to negotiate solely with Francisco Partners was detrimental.   Indeed, on April 28, 2015, Jefferies received an unsolicited non-binding indication of interest from Company B for *$13.70 per share*.  Company B's offer was *$1.05, or 8.3%, higher* than Francisco Partners' offer.  However, because ClickSoftware had entered into an exclusivity agreement with Francisco Partners, they were unable to respond to Company B's superior offer.

58.    As such, to the extreme detriment of ClickSoftware's shareholders, the Board achieved its objective of entering into the Merger with its favored bidder,

Francisco Partners, for wholly inadequate consideration; despite the fact that other parties were ready and willing to pay substantially more for the Company.

59.     It is no surprise that the Individual Defendants only wanted to enter into a transaction with Francisco Partners, a private equity firm that expressed no interest in replacing management or the Board.   The Individual Defendants were predominantly concerned with keeping their jobs and cashing in on lucrative financial benefits stemming from a transaction with Francisco Partners, rather than acting in the best interests of ClickSoftware and its shareholders.   As such, the Individual Defendants steered the process away from potential strategic buyers and towards Francisco Partners.   Indeed, the Proxy reveals that there will be no amendments or changes to any employment agreements after the Merger; meaning all the Individual Defendants and executives will keep their jobs.

60.     Additionally, while ClickSoftware public shareholders will be fleeced of their holdings in the Company, certain Individual Defendants and corporate insiders, who dominated the sales process, stand to receive a financial windfall they would not otherwise enjoy if the Company were to remain a standalone entity. Pursuant to the Merger Agreement, the Company's stock options and restricted shares will no longer be subject to their restrictions and will become fully redeemable upon consummation of the Proposed Transaction.   Each of the Individual Defendants have substantial holdings in the Company, in the form of options and restricted shares.  For example, Defendant BenBassat will alone receive over $21.7 million in immediate liquidity upon the close of the Merger.  As such, the Proposed Transaction will certainly provide the substantial benefit of allowing the Individual Defendants and other corporate insiders to liquidate their otherwise illiquid holdings – a benefit not available to the Class.   Therefore, the Individual

Defendants were incentivized to drive a sales process that primarily served their own interests and was detrimental to ClickSoftware and its shareholders.

***The Preclusive Deal Protection Mechanisms***

61.     To further protect its deal with Francisco Partners, the Individual Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

62.     For example, the Merger Agreement contains a termination fee provision that requires ClickSoftware to pay up to $21.93 million (***a staggering 5%*** of the of the Company's equity value) in fees and expenses to Optimizer (and ultimately Francisco Partners) if the Company decides to pursue another offer, thereby essentially requiring that any alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

63.     The Agreement also contains a "No Solicitation" provision which bars the Board and any Company representatives from attempting to procure a price in excess of the amount offered by Francisco Partners.  It further demands that the Company terminate any and all prior or on-going discussions with other potential suitors.

64.     Additionally, the Merger Agreement provides that if the Company so much as receives an inquiry from an unsolicited bidder that may lead to a superior proposal, it must notify Francisco Partners within twenty-four (24) hours of the identity of the bidder and the material terms of the proposal, prior to taking action pursuant to the competing proposal.   Additionally, the terms of the Merger Agreement constrain ClickSoftware by limiting the amount of time they can discuss a superior proposals to 18 days.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Francisco Partners.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

65.     Further, pursuant to the Merger Agreement, the Board must also give Francisco Partners five (5) business days after the delivery of the prompt notice during which it must negotiate with Francisco Partners (should Francisco Partners desire to negotiate) so that Francisco Partners has the opportunity to adjust the terms and conditions of the Merger Agreement so that the competing proposal ceases to be a superior proposal.  Accordingly, the Merger Agreement unfairly assures that any "auction" will favor Francisco Partners and piggy-back upon the due diligence of the foreclosed alternative bidder.

66.     Moreover, concurrently with the execution of the Merger Agreement, Francisco Partners entered into a voting agreement with Defendant BenBassat and Idit BenBassat (collectively the "BenBassat Group") which guarantees that 9.6% of ClickSoftware's shares will be voted in favor of the Merger.  Indeed, upon the close of the Merger, the BenBassat group stands to receive over $40.61 million in immediate liquidity.

67.     Ultimately, these preclusive deal protection devices and agreements restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

68.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

*The Materially Misleading and Incomplete Proxy*

69.   On May 7, 2015, ClickSoftware filed its Proxy, which fails to disclose material information necessary for reasonable shareholders to make an informed vote on whether to approve the Merger.

i.   **Material Omissions and Misrepresentations Concerning the Background of the Proposed Transaction**

70.   The Proxy omits many important details concerning the process that led up to the signing of the Merger Agreement.

71.   Specifically, the Proxy fails to disclose the nature and extent of any prior relationship between ClickSoftware and Francisco Partners, and/or any of their respective directors or officer.   Additionally, the Proxy fails to disclose why Francisco Partners did not submit a final bid for the Company when it first expressed interest in acquiring ClickSoftware in 2013.   This information is material to shareholders because it explains why the Board favored Francisco Partners to the exclusion of all other bidders.

72.   The Proxy fails to disclose the vetting process that led to the selection of Jefferies as the Company's financial advisor and whether any other banks were considered.   This information is material to shareholders because without this information the Company's public shareholders cannot evince the rationale for the Board's selection of Jefferies and whether the Board performed a conflict check to ensure that Jefferies was capable of rendering independent advice to the Board.

73.   On page 22, the Proxy states that on November 27, 2014 Francisco Partners submitted an offer to purchase the Company for $11.00 per share. However, the Proxy fails to disclose: (i) how the Company responded to this proposal; (ii) whether there were any meeting between ClickSoftware and Francisco Partners prior to this offer, especially since they had previously expressed interest in

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

acquiring the Company; and (iii) whether the Board was advised about this proposal; and (iv) to what extent, if any, the Board participate or directed negotiations with Francisco Partners or any other parties.  This information is material to shareholders because it shows the nature of the relationship between ClickSoftware and Francisco Partners.  This information is also material because it shows the extent to which the Board was involved in the sales process, or whether the Board simply allowed Defendant BenBassat and CFO Joel Jeselsohn to exclusively control the process.

74.    Also on page 22, the Proxy states that Jefferies contacted 16 potential bidders and that management requested that the bidders enter into confidentiality agreements; however, the Proxy fails to disclose how many of the 16 parties entered into such confidentiality agreements and whether those agreements contained "don't-ask-don't-waive" provisions.  This information is material to shareholders because it allows them to determine whether there are other potentially interested bidders who are contractually precluded from making superior offers to acquire the Company.

75.    The Proxy states that on February 4, 2015, there was a "media report" and "rumors" which prompted 11 additional parties to express interest in a potential acquisition of ClickSoftware.  However, the Proxy fails to disclose the source and content of such reports and rumors and the reason why these 11 additional parties were not originally contacted or identified by Jefferies.  This information is material to shareholders because it shows the extent of the sales process undertaken by Jefferies and the Board.

76.    Additionally, the Proxy states that Jefferies responded to this interest by qualifying the parties to participate in the process.  However, the Proxy fails to disclose: (i) what it means for Jefferies to "qualify" interested parties; and (ii) how Jefferies went about "qualifying" interested parties, including any standards and

procedures Jefferies applied in making such determinations.   Such information is material to shareholders because without it the information presented is unclear and vague.

77.   On Page 22, the Proxy states that between February and March 2015, the Company received an indication of interest from Francisco Partners; however, the Proxy fails to disclose what that offer was.

78.   Additionally, the Proxy states that Company C submitted a proposal for $13.00 to $15.00 but then decided not to move forward with the process after presentations were made.   To that extent, the Proxy fails to disclose: (i) when such presentations took place; (ii) whether it was the Board, management or Jefferies that made the presentations; and (iii) what efforts if any were made to negotiate with Company C, which was the superior bidder throughout the entire sales process.   This information is material to shareholders because Company C offered the highest consideration and it is necessary to understand whether the Board made any effort to negotiation with them and the reason why a transaction with Company C could not be achieved.

79.   The Proxy further states that ClickSoftware entered into an exclusivity agreement with Francisco Partners.   However, the Proxy fails to disclose why the Company entered into this agreement without first asking Company B to raise its offer.   This information is material to shareholders because Company B did, in fact, raise its offer but due to the exclusivity agreement, ClickSoftware was unable to respond to Company B's superior proposal.   Such material information needs to be disclosed to shareholders so they can assess whether the Proposed Transaction is a value maximizing transaction in which they are getting fair consideration for their shares.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

80.     Each of the above referenced omissions are material because they directly relate to the process the Board took to maximize shareholder value and whether the Board inappropriately steered the process toward a deal with Francisco Partners to the detriment of the Company's shareholders.

### ii.     Materially Incomplete and Misleading Disclosures Concerning Jefferies' Financial Analyses

81.     In addition to the above, the Proxy also omits several important details concerning the financial analysis undertaken by Jefferies in support of its fairness opinion.

82.     Strikingly, the Proxy fails to disclose *any and all* management financial projections which were given to and relied upon by Jefferies in preparation of its financial analyses and fairness opinion.  Included in these undisclosed management financial projections are free cash flows figures, which Jefferies specifically referenced as critical figures the bank used in its discounted cash flow analysis on page 33.  It is well-settled that management's financial projections are crucial to providing shareholders with management's inside view of the Company's value and future prospects.  This data is necessary when asking shareholders to make an informed decision about whether to vote in favor of the Proposed Transaction and, thus, must be disclosed.

83.     Additionally, with respect to the *Selected Companies Analysis*, referenced on pages 30 to 31, the Proxy fails to disclose: (i) the criteria for selecting the comparable companies used in the analysis; and (ii) the multiples observed for each of the companies in the analysis, or at least a complete high/low/mean/median range.  This information is material and necessary because absent disclosure of the information, shareholders have no way to gauge the weight of the representative ranges used in the analysis.

---

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

84.     With respect to the *Selected Transactions Analysis*, referenced on page 32, the Proxy fails to disclose: (i) the basis for selecting the companies and transactions used in the analysis; (ii) the multiples observed for each of the selected transactions, or at least a complete high/low/mean/median range; (iii) whether any other metrics were considered, especially since Jefferies stated that the LTM TEV/EBITDA measure "did not yield a meaningful range"; and (iv) whether Jefferies had any concerns that this analysis, which yields an implied value range of $10.40 to $15.49, shows that the $12.65 Merger consideration undervalues the Company.   This information is material and necessary for ClickSoftware shareholders to have a fair summary of the financial analysis performed by Jefferies.

85.     With respect to the *Discounted Cash Flow Analysis*, referenced on page 33, the Proxy fails to disclose: (i) the definition of "free cash flows" used in the analysis; (ii) the management financial projections that were provided to and relied upon by Jefferies in this analysis; (iii) the judgments and key inputs considered by Jefferies in selecting the discount rate range of 10.75% to 12.75%, including how weighted average cost of capital was calculated in the analysis; (iv) the judgments and key inputs considered by Jefferies in selecting the perpetuity growth rate range of 2.00% to 4.00%; and (v) whether Jefferies had any concerns that this analysis, which yields an implied value range of $12.47 to $18.60, shows that the $12.65 Merger consideration undervalues the Company.

86.     Additionally, on page 33, the Proxy states that within the last two years, Jefferies had performed various financial services for companies affiliated with Francisco Partners and has acted as a financial advisor to a portfolio company of a fund managed by Francisco Partners in connection with a merger transaction, for which they received compensation.  However, the Proxy fails to disclose the extent of such services and the amount of such compensation.  This information is material

---

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

to shareholders because it shows the extent, if any, of Jefferies' conflict of interest in acting as a financial advisor to ClickSoftware in connection with this Merger.

87.     Absent the material information set forth above, ClickSoftware shareholders do not have sufficient information to make a fully-informed vote for or against the Merger.  Accordingly, Plaintiff request injunctive relief to remedy this irreparable harm.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

88.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with ClickSoftware and owe the Company the duties of due care, loyalty, and good faith.

89.     By virtue of their positions as directors and/or officers of ClickSoftware, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause ClickSoftware to engage in the practices complained of herein.

90.     Under the Companies Law, each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

    a.    act with the requisite diligence and due care that is reasonable under the circumstances;

    b.    act in the best interest of the company;

    c.    use reasonable means to obtain material information relating to a given action or decision;

    d.    refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

   e. avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

   f. disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

91. In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of ClickSoftware, are obligated to refrain from:

   a. participating in any transaction where the directors' or officers' loyalties are divided;

   b. participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public shareholders; and/or

   c. unjustly enriching themselves at the expense or to the detriment of the Company or its shareholders.

92. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to ClickSoftware, Plaintiff and the other public shareholders of ClickSoftware, including their duties of loyalty, good faith, and due care.

93. As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their ClickSoftware common stock in the Proposed Transaction.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

## DERIVATIVE AND DEMAND FUTILITY

94.     Plaintiff also brings this action derivatively pursuant to Federal Rule of Civil Procedure 23.1 in the right and for the benefit of ClickSoftware to redress injuries suffered and to be suffered by ClickSoftware as a direct result of the breaches of fiduciary duty and other violations of law by the Individual Defendants. ClickSoftware is named as a nominal defendant solely in a derivative capacity.

95.     Plaintiff owns and has owned ClickSoftware common stock at all times relevant hereto.

96.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting his rights.

97.     Plaintiff is and at all relevant times has been a continuous shareholder of ClickSoftware common stock.

98.     This action is not being used by Plaintiff to gain any personal advantage, nor does Plaintiff maintain any personal agenda other than seeking to correct the wrongs that have been done to the Company.  To this end, Plaintiff has taken steps to file this action and has retained counsel experienced in derivative litigation and corporate governance actions.

99.     ClickSoftware's Board members have directly participated in the wrongs complained of herein, which disables them from acting independently, objectively and in good faith to advance the interests of ClickSoftware or respond impartially to a demand by shareholders.  Consequently, Plaintiff's demand upon the Company to take action requested herein is excused as futile.  ClickSoftware's Board and its management are also antagonistic to this lawsuit as follows, and thus, Plaintiff has not made a pre-filing demand on the Board to initiate this action:

a.     The members of the Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary

---

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the Company for the violations of law complained of herein. These are people that they have developed professional relationships with, who are their friends, and with whom they have entangling alliances, interests, and dependencies.  Therefore, the Board members are not able to, and will not, vigorously prosecute any such action.

b.      The members of the Board have benefited, and will continue to benefit, from the wrongdoing alleged herein and are incapable of exercising independent objective judgment in deciding whether to bring this action.

c.      In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves – something they are unwilling to do.  Such a suit would require the directors to expose themselves to millions of dollars in liability to the Company and its shareholders.

100.   Demand is also excused because the Company would be irreparably harmed if the shareholder vote on the Proposed Transaction, scheduled for June 11, 2015, was permitted to proceed without first affording the relief requested herein. Under applicable California corporate law, demand is excused where, as here, a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation.

## FEDERAL LAWS

101.  Section 14(a) of the Exchange Act makes it unlawful to solicit a proxy "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest."  15 U.S.C. §78n(a).

102.  Rule 14a-9, which the SEC promulgated under §14(a), provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

---

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. §240.14a-9(a).

103.   ClickSoftware and the Individual Defendants have violated Section 14(a) of the Exchange Act by disseminating a false misleading and incomplete Proxy.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties against Individual Defendants

104.   Plaintiff repeats and re-alleges each allegation set forth herein.

105.   The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public shareholders.

106.   By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in ClickSoftware.

107.   As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the shareholders of ClickSoftware by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of ClickSoftware to its public shareholders.

108.   Indeed, Defendants have accepted an offer to sell ClickSoftware at a price that fails to reflect the true value of the Company, thus depriving shareholders of the reasonable, fair and adequate value of their shares.  The Proposed Transaction was not the result of a competitive bidding process or arms'-length negotiation where all possible synergistic acquirers were vetted.

109.   Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

110.   The Individual Defendants dominate and control the business and corporate affairs of ClickSoftware, and are in possession of private corporate information concerning ClickSoftware's assets, business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of ClickSoftware which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

111.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

112.   As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of ClickSoftware's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

113.   Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

114.   Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### On Behalf of Plaintiff and the Class Against Francisco Partners, Optimizer and Merger Sub for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty

115.   Plaintiff repeats and re-alleges each allegation set forth herein.

116.   Defendants Francisco Partners, Optimizer and Merger Sub (collectively "Entities") have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to ClickSoftware and its public shareholders, and have participated in such breaches of fiduciary duties.

117.   The Entities knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, the Entities rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

118.   The Entities have participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  The Entities obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  In connection with discussions regarding the Proposed Transaction, the Entities obtained sensitive, non-public information concerning ClickSoftware operations and thus had the advantage to acquire the Company at an unfair price.  The Entities will benefit from the acquisition of the Company at an inadequate and unfair price if the Proposed Transaction is consummated.

119.   As a result of this conduct by the Entities, Plaintiff and the other members of the Class have and will be damaged by being denied the opportunity to increase the value of their investments in ClickSoftware.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

120.   Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## THIRD CAUSE OF ACTION

### Derivative Claim For Breach of Fiduciary Duty Against the Individual Defendants

121.   Plaintiff repeats and re-alleges each and every allegation above as if set forth in full herein.

122.   As directors of ClickSoftware, the Individual Defendants stand in a fiduciary relationship to the Company and are obligated to conduct the business of the Company with care, loyalty and in good faith.  This cause of action is asserted based upon the Individual Defendants' acts in violation of the Companies Law, which acts constitute a breach of fiduciary duty and waste of the Company's corporate assets.

123.   The Individual Defendants have violated the fiduciary duties of care, loyalty, and good faith owed to ClickSoftware and have acted to put their personal interests and the interests of Francisco Partners ahead of the interests of ClickSoftware.

124.   The Individual Defendants have violated their fiduciary duties by agreeing to the Proposed Transaction without regard to the fairness of the Proposed Transaction to ClickSoftware.  By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as part of a common plan, usurped ClickSoftware's assets for themselves.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

125.   As demonstrated by the allegations above, the Individual Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty and good faith owed to ClickSoftware.

126.   As a direct and proximate result of the Individual Defendants' conduct, ClickSoftware will suffer irreparable harm if the Proposed Transaction proceeds.

## FOURTH CAUSE OF ACTION

### Violations of Rule 14(a) Promulgated Under The Securities Exchange Act Of 1934

127.   Plaintiff repeats and re-alleges each and every allegation above as if set forth in full herein.

128.   Defendants disseminated the false and misleading Proxy specified above which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading or incomplete.

129.   The Proxy violates Rule 14a because it omits material facts necessary to make the statements made not misleading, as set forth in ¶¶ 69-86, *supra*.   If Plaintiff and the other members of the Class were in possession of the facts that have been concealed and omitted by Defendants, Plaintiff and other members of the Class would be materially less likely to vote their shares in favor of the Proposed Acquisition.

130.   In the exercise of reasonable care, Defendants knew or should have known that the Proxy was materially false and/or misleading and would be relied upon by ClickSoftware shareholders in determining how to vote their shares in the upcoming vote on the Merger Agreement.

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

# FIFTH CAUSE OF ACTION

## Violations of Section 20(a) of the Exchange Act

131.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

132.   The Individual Defendants acted as controlling persons of ClickSoftware within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of ClickSoftware, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

133.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and the statements alleged by Plaintiff to be false and misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

134.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Definitive Proxy contains the unanimous recommendation of each of the

Individual Defendants to approve the Merger.   The Individual Defendants were, therefore, directly involved in the creation of the Proxy.

135.   In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

136.   By virtue of the foregoing, the Individual Defendants violated §20(a) of the Exchange Act.

137.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class were injured thereby.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.   Declaring this action to be a proper Class action and certifying Plaintiff as Class representative and  Plaintiff's counsel as Class Counsel;

B.   Declaring demand was made or is futile and the Plaintiff can pursue derivative claims against the Individual Defendants;

C.   Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

1      D.     Declaring the Proxy violates Federal Laws.

2      E.     Enjoining Defendants, their agents, counsel, employees, and all persons

3 acting in concert with them from consummating the Proposed Transaction, unless

4 and until the Company issues all material information and adopts and implements a

5 procedure or process to obtain a merger agreement providing the best possible terms

6 for shareholders;

7      F.     Rescinding, to the extent already implemented, the Proposed

8 Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory

9 damages;

10      G.     Directing the Individual Defendants to exercise their fiduciary duties to

11 commence a sale process that is reasonably designed to secure the best possible

12 consideration for ClickSoftware and obtain a transaction which is in the best interests

13 of ClickSoftware and its shareholders;

14      H.     Imposition of a constructive trust, in favor of Plaintiff and members of

15 the Class, upon any benefits improperly received by Defendants as a result of their

16 wrongful conduct;

17      I.     Directing the Individual Defendants to account to Plaintiff and the

18 Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

19      J.     Awarding reasonable fees, expenses and costs to Plaintiff and

20 Plaintiff's counsel; and

21      K.     Granting such other and further relief as the Court deems just and

22 proper.

23 //

24 //

25 //

26 //

27

28

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 3, 2015

BRODSKY & SMITH, LLC

By: */s Evan J. Smith*
Evan J. Smith, Esquire
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone:  (310) 300-8425
Facsimile: (310) 247-0160
esmith@brodsky-smith.com

*Attorneys for Plaintiff Vincent Zinni*

**OF COUNSEL:**

FARUQI & FARUQI, LLP
Juan E. Monteverde
Innessa S. Melamed
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Plaintiff Vincent Zinni*

**FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**